# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF JAY ANDERSON, JR.
by Special Administrator, Starkeisha DeLaRosa;
J.A. minor child, through her next friend Starkeisha DeLaRosa,

               Plaintiff,                              CASE NO. 2:21-cv-001179

v.

JOSEPH  ANTHONY MENSAH in his individual capacity,
BARRY WEBER, in his individual capacity,
CITY OF WAUWATOSA,
CITIES AND VILLAGES MUTUAL INSURANCE COMPANY, and
ABC INSURANCE COMPANY,

               Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(B)(6)

---

Defendants, Joseph Anthony Mensah, Barry Weber, City of Wauwatosa, and Cities and Villages Mutual Insurance Company, by their attorneys, Wirth + Baynard, submit the following brief in support of their Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim upon which relief may be granted.

## BACKGROUND

This is a civil action brought pursuant to 42 U.S.C. §1983. This case arises from the officer involved shooting of Jay Anderson, Jr. by Defendant Wauwatosa Police Officer Joseph Mensah, which occurred in the early morning hours of June 23, 2016. Plaintiffs allege that at some point during that encounter, Mensah discharged his service weapon at Anderson, ultimately killing him. (Dkt. 47, ¶¶ 2, 78, 112)

The original complaint in this matter was filed on October 13, 2021, by Starkeisha

DeLaRosa as Special Administrator of the Estate of Jay Anderson, Jr. and on behalf of J.A. a minor child. (Dkt. 1) On February 18, 2022, Defendants filed a motion to substitute Chief of Police James MacGillis for former Chief of Police Barry Weber pursuant to Federal Rule 25(d). (Dkt. 25) On February 22, 2022, the Court entered a Text Only Order granting the unopposed motion to substitute. (Dkt. 26) Plaintiffs then filed a First Amended Complaint alleging nine causes of action: (1) Fourth Amendment – Excessive force; (2) Fourteenth Amendment – Failure to Train and Supervise; (3) Fourteenth Amendment – Denial of Equal Protection; (4) Fourth Amendment – Loss of Society and Companionship; (5) *Monell* Claim; (6) Deliberate Indifference; (7) Wisconsin Statute Section 895.46 Indemnification Against Wauwatosa; (8) Direct Action Statute – Wis. Stat. §632.24; and (9) Fourth Amendment – Loss of Society and Companionship. (Dkt. 47)

Fundamental errors throughout the Amended Complaint have created a long and confusing complaint that is wholly insufficient, even under notice pleading standards. "A federal court is not obligated to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself. 'Rule 8(a) requires parties to make their pleadings straightforward so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.'" *Stanard v. Nygren*, 658 F.3d 792, 800 (7th Cir. 2011) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

## MOTION TO DISMISS STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [the court should] accept the well-pleaded facts in the complaint as true, but legal

conclusions and conclusory allegations merely reciting the elements of the claim are not entitled

to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)

(quoting *Iqbal*, 129 S.Ct. at 1951).  In other words, the Supreme Court explained that any legal

conclusions must be supported by factual allegations in the complaint.

Therefore, to survive a motion to dismiss, a plaintiff must plead in the complaint "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 129 S.Ct. at 1951 (citing *Twombly*, 550 U.S. at 556).  A court should

essentially parse out the conclusory allegations and "determine whether the remaining factual

allegations 'plausibly suggest an entitlement to relief.'" *McCauley*, 671 F.3d at 616. "The degree

of specificity required [of the factual allegations] is not easily quantified, but 'the plaintiff must

give enough details about the subject-matter of the case to present a story that holds together.'" *Id*.

(quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010)).  "A more complex case .

. . will require more detail, both to give the opposing party notice of what the case is all about and

to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson*, 614 F.3d at

405.  If allegations of a complaint give rise to an "'obvious alternative [legitimate] explanation'"

for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement

and must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

I.      **THE COURT SHOULD DISMISS FORMER CHIEF OF POLICE BARRY
        WEBER FROM THIS ACTION.**

Plaintiffs bring five claims for relief against former Chief Weber. (*See* Dkt. 47, first,

second, third, sixth, and seventh claims for relief: p.p. 18, 22, 25, 32, 33;)[1] It is not readily clear

from the Amended Complaint whether Plaintiffs intend to sue former Chief Barry Weber in his

---

[1] Defendants later address Plaintiffs' Seventh Claim for Relief—which they contend is not a valid claim for relief.

individual or official capacity. This ambiguity is indicative of the insufficiency of the Plaintiffs' allegations to state either individual- or official-capacity claims. As such, former Chief Weber should be dismissed.

### A. The Complaint Fails to State Individual-Capacity Claims Against Former Chief Weber Because the Allegations are Insufficient to Establish Personal Involvement.

A § 1983 claim will lie against those individuals personally responsible for the Constitutional violation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2011). "Plaintiffs may not rely on 'vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct.'" *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008)). A plaintiff suing a governmental official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right. *Hernandez ex rel Hernandez v. Foster*, 657 F.3d 463, 487 (7th Cir. 2011). Accordingly, § 1983 plaintiffs must "ground [their] legal conclusions in a sufficiently plausible factual basis" that places each defendant "on notice of what exactly [he or she] might have done to violate [the plaintiffs'] rights under the Constitution, federal law, or state law." *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009).

Here, there are no allegations that former Chief Weber had any direct personal involvement in the use of force in this case. The events surrounding the alleged constitutional deprivation involved an encounter between Mensah and Anderson and the use of force in Madison Park. Plaintiffs allege that at some point during that encounter, Mensah discharged his service weapon at Anderson, ultimately killing Anderson. (Dkt. 47, ¶¶ 2, 78, 112) Plaintiffs do not allege that former Chief Weber was personally involved in the events that took place in Madison Park.

Plaintiffs do not allege that former Chief Weber was even present or knew about the events as they were taking place. Thus, there are no allegations in the Amended Complaint that former Chief Weber had any direct personal involvement in the actual incident surrounding the alleged constitutional deprivations in this case.

Accordingly, because there are no allegations that former Chief Weber had any direct personal involvement in the actual incident surrounding any alleged constitutional deprivation sustained by the Plaintiffs, the Court should dismiss former Chief Weber on any potential individual-capacity claims.

**B.      Any Official-Capacity Claims Against Former Chief Weber are Tantamount to Claims against the City of Wauwatosa and Thus Unnecessarily Duplicative of Those Claims.**

In Plaintiffs' original complaint former Chief Weber was named—until the Court granted Defendants' unopposed motion to substitute current Chief of Police, James MacGillis, in place of former Chief Weber pursuant to Federal Rule 25(d). (Dkt. 26) Despite the Order, the bulk of Plaintiffs' allegations against former Chief Weber relate not to his direct involvement in the incident, but instead to his policy-making responsibility within the City of Wauwatosa Police Department. *See, e.g*., (Dkt. 47, ¶¶ 175, 198, 217, 228, 229, 238, 240, and p. 37) These types of allegations amount to a claim against the City of Wauwatosa itself. *See Gusman v. Sheahan, 495 F.3d 852, 859 (7th Cir. 2007); see also Monell v. Dep't of Soc. Services of City of N.Y.*, 436 U.S. 658 (1978). In their first claim for relief, Plaintiffs allege "the acts of Mensah were pursuant to the customs, practices, policies, and/or training of Defendant City of Wauwatosa and Defendant Weber" (Dkt. 47 ¶ 163) and "Defendant Wauwatosa and Defendant Weber have a custom, policy, and practice of encouraging, condoning, tolerating, ratifying, and even rewarding the use of excessive force by Defendant Mensah" (*Id*. at ¶ 164)

The City of Wauwatosa is a named defendant in this action, and all of Plaintiffs' causes of actions are specifically directed at the City of Wauwatosa in addition to other Defendants. (*See* Dkt. 47) Accordingly, all the causes of action directed at former Chief Weber are also directed at the City of Wauwatosa—first, second, third, and sixth claims—and, as explained above, there are no allegations that Chief Weber was personally involved in the alleged events surrounding the use of force. Thus, any official-capacity claims against former Chief Weber effectively duplicate already-pled claims against the City of Wauwatosa. The causes of action directed at Chief Weber are therefore indistinguishable from and duplicative of the causes of action directed at the City of Wauwatosa. Accordingly, the Court should dismiss former Chief Weber on any potential official-capacity claims.

## II.     CLAIMS BROUGHT ON BEHALF OF J.A. FAIL AS A MATTER OF LAW.

The Amended Complaint alleges several claims on behalf of J.A., the minor child of Anderson. (Dkt. 47, second, fourth, fifth, and sixth claims for relief: p.p. 22, 29-30, 32) A prerequisite to any 42 U.S.C. § 1983 action is a constitutional violation, and without establishing the requisite constitutional deprivation, the claim cannot survive. *Baker v. McCollan*, 443 U.S. 137, 140 (1979)(quoting 42 U.S.C. § 1983). Critically, section 1983 claims are personal to the injured party. *See, e.g., Russ v. Watts,* 414 F.3d 783, 790 (7th Cir. 2005)(holding that parents may sue only for constitutional injury to themselves, not for constitutional injuries to their son); *Estate of Johnson by Castle v. Libertyville,* 819 F.2d 174, 178 (7th Cir. 1987) (holding that parents cannot recover under § 1983 for injuries to their daughter, but only for injuries to themselves); *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir. 1974)(holding that a parent could sue only in a representative and not an individual capacity for a deprivation of her son's constitutional rights). Here, J.A.'s individual claims fail as she has *not* alleged a constitutional injury to herself—only a constitutional

injury to her father, for which his estate has brought duplicative claims. (*See* Dkt. 47, p.18)

Section 1983 does not expressly indicate who has standing to bring survival civil rights actions. In such cases where federal law does not address a particular concern, Section 1988 provides that the analogous state law be applied. *Robertson v. Wegmann*, 436 U.S. 584, 588–94, 98 S.Ct. 1991, 56 L.Ed.2d 554, (1978). Wisconsin law gives standing to the personal representative of the deceased person <u>or</u> the person to whom the amount recovered belongs. Wis. Stat. 895.04. The Amended Complaint fails to plead that J.A. is either the personal representative or the person to whom the amount recovered belongs. Thus, to the extent J.A. is attempting to bring survival civil rights actions, the Amended Complaint does not adequately allege her standing to bring such a claim and her claims would be duplicative of the claims brought by the Estate.

Finally, in her fourth claim for relief J.A. attempts to bring a claim under the Fourth Amendment for "loss of society and companionship" against Mensah and the City of Wauwatosa. (Dkt. 47, p. 29) As discussed above, in this claim for relief J.A. does not allege a violation of her constitutional rights under the Fourth Amendment, specifically the Fourth Amendment does not provide a "constitutional interest and right in the familial relationship with her father" as alleged. (Dkt. 47, ¶ 211) Equally confusing, as plead this claim contends the conduct deprived only "Starkeisha Deloros of the society and companionship of her fiancé." (Dkt. 47, ¶ 214)

For all these reasons, all claims brought on behalf of J.A. should be dismissed against all Defendants.

III.    **THE COURT SHOULD DISMISS PLAINTIFFS' SECOND CLAIM FOR RELIEF AS TO ALL DEFENDANTS BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiffs' second claim for relief attempts to state a claim under the Fourteenth Amendment for "failure to train and supervise" against the City of Wauwatosa and Weber. (Dkt.

47, p. 22-25) In *Graham v. Connor,* the Supreme Court of the United States held that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" are analyzed under "the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." 490 U.S. 386, 388 (1989).

Here, all of Plaintiffs' allegations relate to the use of force in the context of an alleged seizure in the field. *See* (Dkt. 47, ¶¶ 149-155) Thus, the Fourth Amendment's objective reasonableness standard will govern the use-of-force analysis in this case, not due process under the Fourteenth Amendment. Therefore, Plaintiffs' second claim for relief does not state a cognizable claim under 42 U.S.C. § 1983, based on the facts alleged.

Moreover, Plaintiffs fail to state a claim against the City of Wauwatosa because it cannot be sued under § 1983 for an injury solely inflicted by its employees or agents. It is well-established that [m]unicipalities do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). As later addressed, a claim is brought against a municipality under *Monell* and Plaintiffs bring a *Monell* claim against the City of Wauwatosa (fifth claim), but that is not what they are doing in their second claim for relief. Accordingly, the Court should dismiss Plaintiffs' second claim for relief as to all Defendants.

## IV. THE COURT SHOULD DISMISS PLAINTIFF'S THIRD CLAIM FOR RELIEF AS TO ALL DEFENDANTS BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Estate's third claim for relief attempts to state a claim under the Fourteenth Amendment for denial of equal protection against all Defendants. (Dkt. 47, p. 22-25) In support, the Estate baldly alleges that "Defendant Mensah treated Mr. Anderson less favorably—and with

8

unreasonable force—than his similarly situated White counterparts, wholly or in part because he was Black." (Dkt. 47, ¶ 191) There are no factual allegations whatsoever in the Amended Complaint that Jay Anderson Jr. was treated less favorably than his similarly situated White counterparts. For this reason alone, the Amended Complaint falls short of the pleading standard as to this claim. Additionally, this claim is overbroad as to the defendants named. Only Mensah is alleged to have treated Anderson less favorably based on his race. As such, this claim would further fail against all other defendants.

## V. THE COURT SHOULD DISMISS PLAINTIFFS' FIFTH CLAIM FOR RELIEF BECAUSE IT FAILS AS A MATTER OF LAW.

Plaintiffs' fifth claim for relief attempts to state a claim under *Monell*. (Dkt. 47, p. 22-25) Plaintiffs allege the City of Wauwatosa's "conduct constituted a violation of the Fourteenth Amendment and/or Plaintiffs' equal protection rights guaranteed by that same Amendment" (*Id.* at ¶ 222) and the City of Wauwatosa "deprived Plaintiffs of their Fourteenth Amendment rights for which Plaintiffs are entitled to damages proximately caused thereby" (*Id.* at ¶ 223).

Although the Supreme Court has held that municipalities are susceptible to liability under § 1983 (*Monell at* 690), strict constraints limit the liability of *Monell* defendants for the unconstitutional acts of its employees or others under § 1983. Here, Plaintiffs' municipal liability claims are deficient. While Plaintiffs attempt to establish a *Monell* claim against the City of Wauwatosa by including buzz words of "custom", "de-facto policy" or "failure to adequately supervise or train" they failed to plead sufficient factual support, which fails the *Twombly-Iqbal* pleading requirements.

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell* at 691. Under *Monell*, municipal liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

9

said to represent official policy, inflicts the injury." *Id.* at 694. The Seventh Circuit identified three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy, statement, ordinance, or regulation that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Here, Plaintiffs' municipal liability claims are deficient. First, Plaintiffs have not identified any specific written policy, which when enforced, was causal of the alleged Fourteenth Amendment violation. In fact, the Amended Complaint contends the unspecified "de-facto policies are inconsistent with or even violate WPD's written policies." (Dkt. 47, ¶ 216) The failure to identify a policy defeats Plaintiffs' claim here: "[l]ocating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). *See also Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017) ("The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institutions itself or is it merely one undertaken by a subordinate actor?").

Second, Plaintiffs do not adequately plead a custom or practice claim. While a custom or practice "may be so persistent and widespread [such that it has] the force of law," when identifying such custom, "[t]he word 'widespread' must be taken seriously." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970). The critical issue is whether there was a particular custom or practice that

was so well-settled that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. *Board of County Comm'r v. Brown*, 520 U.S. 397 (1997). *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482 (7th Cir. 2007) (four deadly force incidents were not enough to provide the city with actual or constructive knowledge); *Gable v. City of Chicago*, 296 F.3d 531, 538-539 (7th Cir. 2002) (three incidents over a four-year period in which city agents erroneously informed vehicle owners that their automobiles were not impounded at city lot were too few to support municipal liability); *Robles v. City of Fort Wayne*, 113 F.3d 732, 737 (7th Cir. 1997) (evidence failed to support plaintiff's claim that the City had a policy of investigating citizen complaints against police officers in such way as to exonerate officer where evidence indicated four citizen complaints against the officer were not sustained, while fifth was sustained after internal investigation).

While Plaintiffs use the gratuitous phrase of "de facto policy or custom" there are no factual allegations to support this conclusion. The Amended Complaint is devoid of specific facts demonstrating the existence of a de facto policy or custom which directly caused a Fourteenth Amendment violation. Moreover, in addition to establishing widespread conduct, a plaintiff must also allege and show deliberate indifference. *Thomas*, 604 F.3d at 303. Under this stringent standard, "it is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once." *Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006). Proof of deliberate indifference can take one of two forms: (1) "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"; or (2) "a repeated pattern of constitutional violations" made the deficiencies in the systems "plainly

obvious to the city policymakers." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). *See also Connick v. Thompson*, 131 S. Ct. 1350, 1365 (2011) (while "highly predictable" is a viable basis to establish deliberate indifference, it was not highly predictable in this case that failure to better train prosecutors on Brady obligations would have resulted in the production of the exculpatory evidence and prevented plaintiff's wrongful conviction).

Here, Plaintiffs fail to allege factual averments showing widespread conduct and deliberate indifference in violating citizens' Fourteenth Amendment rights. Additionally, Plaintiffs do not adequately plead deliberate indifference. The Amended Complaint makes no factual allegations that the alleged deprivations were so widespread to constitute deliberate indifference. Plaintiffs do not allege that officers had previously violated citizens' Fourteenth Amendment rights such that their deficient training had become (a) "so obvious" and "the inadequacy so likely" to result in constitutional deprivations or (b) that the repeated pattern of violations created systematic deficiencies "plainly obvious" to policymakers of the City of Wauwatosa.

Third, the Amended Complaint fails to plead facts giving rise to municipal liability based on failure to train. To state a claim for a municipal civil rights violation based on a failure to train, a plaintiff must allege that the municipality adopted a policy that amounts to "deliberate indifference to the rights of the person with whom the [untrained employees] come into contact." *Connick v. Thompson,* 563 U.S. 51, 61 (2011). For example, a city may be deliberately indifferent if its policymakers choose to retain a program in which they have actual or constructive notice that one of their training programs causes city employees to violate citizens' constitutional rights. *See generally, Connick*. Here, the Amended Complaint only alleges the City of Wauwatosa declined to implement sufficient training and/or provided inadequate training and supervision to Defendant Mensah. (Dkt. 47 ¶¶ 216, 217, 218) The Amended Complaint does not specify in what way the

training was deficient.

To establish a failure to train claim, "[a] pattern of similar constitutional violations is ordinarily necessary to demonstrate deliberate indifference." *Id.* at 62. Even if "a particular officer may be unsatisfactorily trained" that "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). A plaintiff must allege more than mere conclusory allegations that the alleged constitutional violation was the result of inadequate training. For example, in *Moss v. U.S. Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) (reversed on other grounds) the Ninth Circuit granted defendants' motion to dismiss because the plaintiffs, in that case, did not specify in what way any training or supervision was deficient.

Plaintiffs' *Monell* allegations fall far short of what is required—rather Plaintiffs' "threadbare recitals" are exactly the conclusory allegations the Supreme Court warned of in *Iqbal*. As such, Plaintiffs' fifth claim for relief fails as a matter of law and should be dismissed.

## VI. THE COURT SHOULD DISMISS PLAINTIFFS' SIXTH CLAIM FOR RELIEF AS TO ALL DEFENDANTS BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' sixth claim for relief is captioned "42 U.S.C. 1983-Deliberate Indifference." (Dkt. 47, p. 32) Plaintiffs allege Defendants City of Wauwatosa and Weber "knew of Mensah's violent and objectively unreasonable conduct of using excessive force and condoned, approved, and helped facilitate his violent behavior, which resulted in him also shooting and killing Jay Anderson, Jr. (Dkt. 47, ¶ 227)

Section 1983 is not "itself a source of substantive rights, but merely provides a means for vindicating federal rights elsewhere conferred," *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides a federal cause of action for "the deprivation, under color of [state] law, of

a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for relief under § 1983, a plaintiff must allege: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person or persons acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7ᵗʰ Cir. 2009).

Here, all of Plaintiffs' allegations relate to the use of force against Jay Anderson Jr. (*See* Dkt. 47, ¶ 230) To the extent that is what Plaintiffs are alleging; *first*, it was not clearly pled; and *second*, it would duplicate an already-pled claim (*See* Dkt. 47, first claim for relief). Thus, Plaintiffs sixth claim for relief does not state a cognizable claim under 42 U.S.C. § 1983—at least not one that is separate and distinct from their Fourth Amendment claim. Accordingly, the Court should dismiss Plaintiffs' sixth claim for relief as to all Defendants.

## VII.  THE COURT SHOULD DISMISS PLAINTIFFS' SEVENTH CLAIM FOR RELIEF SEEKING INDEMNIFICATION BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs' seventh claim for relief attempts to state a claim against all Defendants by invoking Wis. Stat. § 895.46, an indemnification statute that provides as follows:

> If the defendant in any action or special proceeding is a public officer or employee and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employee and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employee . . . in excess of any insurance applicable to the officer or employee shall be paid by the state or political subdivision of which the defendant is an officer or employee.

Wis. Stat. § 895.46(1)(a). Section 895.46, however, appears to create a private right of action for public officials against whom a judgment has been entered, not persons suing for violations of their civil rights. *See Chiroff v. Milwaukee Cty.*, 2000 WI App 233 n.11, 239 Wis. 2d 232, 619 N.W.2d 307 ("The intent of [§ 895.46] is to enable an official of a political subdivision to bring an

action against the political subdivision to obtain reimbursement for an obligation of the political subdivision he or she has borne."); *Williams v. Michalsen*, No. 19-CV-56-PP, 2020 WL 1939136, at *9 (E.D. Wis. Apr. 21, 2020) ("If the individual officers are found liable, the indemnity mandated by § 895.46 will be triggered; the plaintiffs do not need to sue the county for that to happen."). This cause of action is not actually a cause of action, but assertion of damages theories. Thus, Plaintiffs' seventh claim for relief should be dismissed with prejudice against all Defendants.

## VIII. TO THE EXTENT PLAINTIFFS' EIGHTH CLAIM FOR RELIEF SEEKS TO SUE CVMIC PURSUANT TO § 1983 IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs include the City of Wauwatosa's insurer, Cities and Villages Mutual Insurance Corporation, as a named defendant. (Dkt. 47, ¶ 14) The Amended Complaint is not clear with respect to which of their claims Plaintiffs seek to sue CVMIC directly. *Id.* ¶ 248 (asserting generally that "Plaintiffs are allowed to maintain this lawsuit directly against" CVMIC). However, to the extent they intend to sue CVMIC directly with respect to their § 1983 claims (claims 1-6 and 9), those claims must be dismissed as they relate to CVMIC. Indeed, Wis. Stat. § 632.24 governing direct actions against insurers "allows a separate 'direct action' only against an insurer for negligence." *Akright v. Graves*, Case No. 05-C-0821, 2006 WL 897759, *2 (E.D. Wis. Apr. 3, 2006) (explaining that § 632.24 creates "a separate claim against the insurer for damages caused by negligence of the insured" and denying motion for leave to amend complaint to add a § 1983 claim against WCMIC); "The terms of the statute do not authorize plaintiff to bring a separate action against WCMIC under § 1983 for alleged constitutional violations." *Id.*; *see also Grace Christian Fellowship v. KJG Investments Inc.*, No. 07-C-0348, 2010 WL 1905006, *6 (E.D. Wis. May 11, 2010) ("[Wisconsin's] direct action statute creates a separate claim against the insurer for damages caused by negligence of the insured."); *Est. of Stinson v. Milwaukee Cnty.*, No. 21-CV-

1046-JPS, 2022 WL 1303279, at *4 (E.D. Wis. May 2, 2022).

Absent a basis upon which to proceed directly against CVMIC under § 1983, Plaintiffs'

eighth claim for relief and defendant CVMIC should be dismissed.

## IX. THE COURT SHOULD DISMISS PLAINTIFFS' NINTH CLAIM FOR RELIEF BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Estate's ninth claim for relief seeks to proceed with a loss of society and

companionship claim under the Fourth Amendment. In support the Estate alleges "the conduct of

Defendant Mensah, as set forth in the preceding paragraphs which resulted in the death of Jay

Anderson, Jr, [sic] deprived Starkeisha Delarosa of the society and companionship of her fiancé."

(Dkt. 47, ¶ 214)

Initially, as argued above (Section II), the Fourth Amendment does not provide a right to

society and companionship as alleged. Next, under Wisconsin law, in a wrongful death action

damages for loss of society and companionship may *only* "be awarded to the spouse, children or

parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time

of the death." Wis. Stat. § 895.04(4). Neither the Estate nor Starkeisha Delarosa have standing to

recover damages for loss of society and companionship. As such, the Estate's ninth claim for

relief should be dismissed.

## X. PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AGAINST THE CITY OF WAUWATOSA OR ANY DEFENDANT SUED IN HIS OFFICIAL CAPACITY.

Plaintiffs seek punitive damages against the City of Wauwatosa. (Dkt. 47, p. 37) However,

punitive damages are not recoverable under § 1983 against a municipality or, by logical extension,

a defendant sued in his official capacity. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271

(1981); *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010). As such, any claim for punitive

damages against the City of Wauwatosa should be dismissed.

**XI.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF.**

In addition to seeking damages, Plaintiffs also request "equitable and injunctive relief to prevent future violations of the law" (Dkt. 47, p. 39),  however, they do not have standing to bring such a claim. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 1670 (1983). To have standing to bring a claim for prospective relief, Plaintiffs must establish that they are under threat of an actual and imminent injury, which has a causal relation between it and the conduct to be stopped, and that a favorable judicial decision is likely to prevent or redress it. *E.g. Teesdale v. City of Chicago*, 690 F.3d 829, 836–37 (7th Cir. 2012) (quoting *Goldhamer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010)). The death of Anderson is insufficient grounds to establish standing based on prospective harm by his Estate or his young daughter.

As such, the Court should dismiss any request for equitable or injunctive relief as to all Defendants.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that all claims alleged against them be dismissed with prejudice for failure to state a claim.

Dated at Wauwatosa, Wisconsin this 7th day of September 2022.

> **WIRTH + BAYNARD**
> Attorneys for Defendants
>
> BY:    */s/ Kiley B. Zellner*
> Kiley B. Zellner, WI Bar No. 1056806
> 9898 W. Bluemound Road, Suite 2
> Wauwatosa, Wisconsin 53226
> T: 414) 291-7979 / F: (414) 291-7960
> Email: kbz@wbattys.com